IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL RECK, # M-40413,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 16-cv-1141-NJR |
| | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **JOHN TROST,** | ) |
| **KAREN KNIEPERT,** | ) |
| **TONYA SMITH,** | ) |
| **PRACTIONER WINTERS,** | ) |
| **PRACTIONER SOUTH,** | ) |
| **GAIL WALLS,** | ) |
| **and UNKNOWN PARTY/JOHN DOE ONE** | ) |
| **(Medical Director),** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that several prison medical providers were deliberately indifferent to his serious medical condition. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27

(7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff suffers from Crohn's disease, a chronic ailment that he states is well-documented in his medical records. (Doc. 1, p. 23). This condition places him at higher than normal risk for infections and other complications involving his digestive tract.

On July 10, 2015, Plaintiff submitted the first of many sick call requests seeking medical attention for significant pain, tenderness, redness, and swelling that started in his scrotum. (Doc. 1, p. 6). On July 14, 2015, he was seen by Kniepert (medical technician) for labs that had been ordered as part of his annual physical. Plaintiff told her about his painful condition, but she refused to give him any treatment or pain medication for it.

Plaintiff's symptoms worsened, to include deep tissue pain, redness, and swelling of his

2

perineum, indicative of a cellulitis infection. (Doc. 1, p. 7). Plaintiff submitted two more sick call requests, but got no response.

On July 28, 2015, Plaintiff saw Kniepert again for additional labs unrelated to his new symptoms. Again, Kniepert refused to examine Plaintiff or provide any treatment for his painful condition, and he refused to refer him to the doctor. (Doc. 1, p. 8). Plaintiff's symptoms continued to worsen; he submitted two more sick call requests in August. These described inflammation and severe pain that had spread to his anal area and left buttock, and then the development of a peri-anal fistula with abscess. (Doc. 1, p. 8). Plaintiff wrote to his counselor about the lack of action on his sick call requests, but got no response. He next asked his mental health counselor to intervene to get him a medical appointment, but nothing happened despite her promise to help. (Doc. 1, p. 9).

On September 1, 2015, Plaintiff was bleeding from his anal area. He was brought to see Dr. Trost, who confirmed that Plaintiff had a fistula. Plaintiff explained that he had a "prolonged past history" with fistulas and that only surgery would correct the condition because the fistula would not heal on its own. (Doc. 1, pp. 9-10). Dr. Trost told Plaintiff that he would refer him to a GI specialist for a colonoscopy, and he would prescribe Humira and antibiotics. Plaintiff received the antibiotics but not the Humira.

On September 2, 2015, Plaintiff's fistula burst open, causing extreme pain and profuse bleeding. He was taken to see Nurse Smith. She gave him gauze and promised she would inform Dr. Trost and set an appointment, but refused to give Plaintiff any pain medication. (Doc. 1, p. 10).

On September 12, 2015, the fistula burst again, and Plaintiff passed out from the pain. He submitted a request to see the doctor because the fistula had not responded to the antibiotics.

On September 17, 2015, Plaintiff saw Nurse Smith. She provided gauze but no pain medication. (Doc. 1, p. 11). Plaintiff's pain continued, and he developed symptoms of scrotal tenderness and swelling, as well as multiple abscess eruptions and inflammation on his buttocks indicative of cellulitis. (Doc. 1, p. 12). The extreme pain made it very hard for Plaintiff to sit or

move.

On September 23, 2015, Plaintiff spoke to Nurse Winters during medication distribution to say he feared he had a MRSA infection. Winters told Plaintiff to submit a sick call request. Plaintiff responded that he had done so multiple times, but only two had been answered. Winters refused to put in a pass for Plaintiff. The next day (September 24), an officer brought Plaintiff to sick call for the possible MRSA infection. Nurse South examined Plaintiff. South treated Plaintiff rudely and made several unprofessional comments. In response to Plaintiff's complaints of ongoing severe pain, South told him to "buck up," and refused to give him any pain medication. (Doc. 1, p. 12).

On October 1, 2015, Plaintiff was awakened by pain and found he was bleeding from his anal area. On October 2, he saw Dr. Trost and informed him of the past month of ongoing complications and pain. Dr. Trost prescribed pain medication and antibiotics, and repeated his promise to schedule Plaintiff for a colonoscopy and GI consultation. (Doc. 1, p. 13).

On October 14, 2015, the fistula burst again. He saw Nurse Smith on October 19, and was given gauze and topical medications. The fistula burst again on October 23, and Plaintiff noticed a second fistula forming to the right side of his anus. (Doc. 1, p. 14).

On October 31, both fistulas burst with extensive bleeding. A nurse was summoned, but Plaintiff got no medical attention. Plaintiff submitted a sick call request. The bleeding continued into the next day. Plaintiff was told in response to his inquiry that a nurse had deemed his condition "not an emergency." (Doc. 1, p. 14).

On November 2, Plaintiff was called to see a nurse (Smith), who said she would ask Dr. Trost about the status of the colonoscopy and GI specialist referral. Smith refused to examine Plaintiff despite his complaint of continued bleeding, and she denied pain medication. (Doc. 1, p. 15).

On November 4, 2015, Plaintiff's bleeding and pain worsened, and he was brought to the First Aid Unit. He saw Dr. Trost, who told him the colonoscopy and Humira were approved, and he should "hang in there." *Id*. Dr. Trost again prescribed antibiotics and pain medication. The

colonoscopy was performed on November 6.

On November 13, Plaintiff's fistula burst again. He submitted a sick call request the next day. He was not seen in response until November 24, at which time nurse McGlorn (who is not a defendant) told him not to submit any more sick call requests "unless he experiences blood clots 'the size of softballs.'" (Doc. 1, p. 16). She did not treat him or give him any pain medications.

Plaintiff's fistula(s) burst again on November 26 and December 15, 2015, causing significant bleeding and pain.

On December 24, 2015, Plaintiff was taken to a GI specialist, who confirmed peri-anal Crohn's disease and fistulas. This doctor ordered Humira and colo-rectal surgery for Plaintiff. Plaintiff again experienced bursting of the fistulas, bleeding, and possible infection into January 2016. (Doc. 1, p. 17).

On January 24, 2016, Plaintiff saw Dr. Butalid (who is not a defendant). This doctor renewed Plaintiff's pain medication and confirmed the approval of the Humira and GI surgery. Plaintiff had still never received Humira despite the fact that Dr. Trost had first prescribed it on September 1, 2015. (Doc. 1, p. 18). Plaintiff started treatment on January 29, 2016, with Cimzia, a medication similar to Humira.

On February 9, 2016, Plaintiff underwent surgery for the fistula at an outside hospital, where the abscess was removed. (Doc. 1, pp. 18, 26). After returning to Menard, he was treated with antibiotics by Dr. Trost on February 15, 2016, when the incision area became infected. Plaintiff was given daily dressing changes of the surgical site until April 11, 2016, when Menard staff determined the area had healed. (Doc. 1, pp. 18-19).

Based on these facts, Plaintiff asserts several claims of deliberate indifference for the delays in providing adequate treatment, failure to timely refer him to a specialist, inadequate staffing and procedures, and persisting with ineffective treatment. (Doc. 1, pp. 23-30). He seeks injunctive and declaratory relief, as well as compensatory and punitive damages. (Doc. 1, pp. 32-33).

5

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the four counts set forth below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Kniepert, Smith, Winters, and South for refusing to examine or treat Plaintiff's symptoms, including his severe pain;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Dr. Trost for delaying his referral of Plaintiff to a GI specialist despite having diagnosed the need for such referral on September 1, 2015;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., South, Walls, and John Doe One (Medical Director) for maintaining deficient staffing, procedures, and a sick call system which caused delays and denials of treatment for Plaintiff's serious condition;
>
> **Count 4:** Eighth Amendment deliberate indifference claim against Dr. Trost, for continuing to treat Plaintiff with antibiotics for three months, while knowing that such treatment was ineffective against Plaintiff's condition.

As explained below, Counts 1, 2, and 3 shall proceed for further review against some of the defendants. Count 4 shall be dismissed for failure to state a claim upon which relief may be granted.

**Deliberate Indifference to a Serious Medical Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."

*Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes a serious condition with complications that worsened over time, and which required medical attention. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

### Count 1 – Kniepert, Smith, Winters, and South

Plaintiff saw Kniepert on two occasions in July 2015 for lab work, and he told her about his pain and other symptoms. She refused to give him any pain medication or treatment, however, and would not refer him to a doctor. Plaintiff describes five encounters with nurse Smith from September to November 2015. She provided Plaintiff with first aid supplies but refused to give him any pain medication despite his requests. While Nurse Winters was distributing medications on September 23, Plaintiff asked Winters for help to get medical attention for his symptoms of a possible MRSA infection, but Winters refused to take any action. Plaintiff was examined by Nurse South on September 24, 2015. He told South about his ongoing pain, including the recent incident of having passed out due to the severity of his pain. South refused to give Plaintiff any pain medication.

Plaintiff informed each of these defendants of his symptoms of pain, bleeding, and possible infection. None of them provided Plaintiff with any treatment or assistance to address these serious risks, however, with the exception of Smith, who gave Plaintiff gauze and ointment but failed to address his severe pain. The provision of some medical care does not defeat an Eighth Amendment

7

claim, if serious symptoms were ignored, or the prisoner's pain was allowed to persist untreated. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007).

At this stage, the Complaint has articulated a deliberate indifference claim against Kniepert, Smith, Winters, and South that survives threshold review under § 1915A. **Count 1** shall proceed against these defendants.

### Count 2 – Delay in Referral to Specialist – Trost

Dr. Trost diagnosed Plaintiff's fistula on September 1, 2015, and informed him that a specialist consultation was needed. But Trost did not take action on the referral until a month later. Plaintiff was not taken to see the GI specialist until December 24, 2015, nearly four months after Trost told Plaintiff that he would be referred. The surgical consult did not take place until a month later, and Plaintiff finally had surgery on February 9, 2016. During these months of delay, Plaintiff continued to suffer pain, bleeding, and deterioration of his condition.

A deliberate indifference claim may be stated against a prison doctor who delays an inmate's referral for specialty care once the need for such care is diagnosed. *See Perez v. Fenoglio*, 792 F.3d 768, 778-79 (7th Cir. 2015) (Eighth Amendment claim was stated where prisoner's injury was serious and painful, and defendant's delay in making referral to specialist prolonged his suffering); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). The Complaint indicates that Dr. Trost's inaction may have caused unconstitutional delay in Plaintiff's treatment. **Count 2** against Dr. Trost also shall proceed for further review.

### Count 3 – Deficiencies in Staffing, Procedures, and Policy

Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation that employs the individual health care provider defendants including South, Walls, and the John Doe One Medical Director. Wexford provides medical care at the prison, however, it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or

8

practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff's recitation of the facts indicates that the delays he experienced in obtaining medical appointments in response to his sick call requests, and the delay in securing appropriate treatment once he saw the initial provider (see Counts 1 and 2) resulted at least in part from the official policies espoused by Defendant Wexford. He specifically points to Wexford's sick call procedures and its failure to maintain adequate staffing and/or properly trained staff. Plaintiff made numerous attempts to obtain care through the sick call system and by personal request to medical staff beginning on July 10, 2015, but no medical professional would examine him until nearly two months later, when his condition worsened to the point that a fistula burst. Further delays ensued while Plaintiff waited for Dr. Trost to initiate the process to seek a specialist referral, and then for that referral to be approved. Taking these facts as true, Plaintiff's claim against Defendant Wexford in **Count 3** cannot be dismissed at this stage.

Plaintiff's inclusion in Count 3 of South, Walls, and the John Doe Medical Director, however, is not warranted. Plaintiff alleges that he suffered humiliation because of South's unprofessional comments during his sick call visit. Such remarks do not constitute deliberate indifference, and Plaintiff does not allege that South's conduct was caused by a Wexford policy. To the contrary, he claims that South violated a policy of Wexford's. Accordingly, South's offensive remarks do not support a claim against South or Wexford, and this portion of the claim shall be dismissed.

As for Walls (Health Care Administrator) and the John Doe Medical Director, Plaintiff does not describe any personal involvement of these individuals in the failure to provide him with treatment for his condition, the failure to respond to his sick call requests, or the delays in referring

him to outside specialists. In order to be held liable in a civil rights action, a defendant must have been "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Likewise, the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Id.* Plaintiff rests his claims against Walls and the Medical Director on the allegation that they were aware of deficiencies in the sick call system and other "medical processes" at Menard, yet failed to correct those deficiencies. (Doc. 1, p. 28). Even if this allegation is true, it does not state a claim of constitutional dimension against these defendants; instead, it suggests possible negligence on their part. Negligence does not violate the Constitution. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

For these reasons, Plaintiff fails to state a claim upon which relief may be granted against South, Walls, or the John Doe Medical Director in Count 3. **Count 3** shall proceed only against Wexford.

### Dismissal of Count 4 – Continuing Ineffective Treatment – Trost

Finally, Plaintiff asserts a separate claim against Dr. Trost, based on Trost's use of antibiotics (Levaquin) to treat Plaintiff's peri-anal abscess and fistula. Trost first prescribed a 14-day course of this antibiotic on September 1, 2015. Trost prescribed a second course of the medication on October 1, 2015, and a third dose on November 4, 2015. During this time, Plaintiff's condition not only failed to improve, but became significantly worse. Plaintiff put Trost on notice of his deteriorating symptoms through his sick call requests and visits. Nonetheless, Trost continued the ineffective antibiotic treatment for three months. Plaintiff includes references to medical articles noting that anal abscesses are not usually curable with antibiotics, and that most anal fistulas require surgical treatment. Plaintiff ultimately had this surgery, but only after much delay (*See* **Count 2**).

The mere fact that Dr. Trost prescribed a treatment that proved ineffective does not state a claim. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). A deliberate indifference claim

may arise, however, if a doctor continues an ineffective treatment plan despite knowing that it is ineffective. *See Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) (treatment that was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition" may support deliberate indifference claim); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)). The decision to continue the allegedly ineffective treatment must be "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Considering all the facts Plaintiff presents regarding Dr. Trost's treatment plan and his announced intention to refer Plaintiff to a specialist for care, the decision to give Plaintiff three courses of antibiotics does not suggest that Trost failed to exercise professional judgment. Nor does Trost's use of antibiotics appear to be "blatantly inappropriate" in the context of his plan to send Plaintiff to an outside specialist. The delay in that referral is the subject of Count 2 in this action and shall be duly considered. But Plaintiff's assertion of a separate constitutional violation based on the ineffectiveness of the antibiotics prescribed by Trost over a 3-month period does not rise to the level of deliberate indifference to a serious medical condition. **Count 4** against Dr. Trost shall be dismissed without prejudice.

## Disposition

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **WALLS** and **UNKNOWN PARTY JOHN DOE ONE (Medical Director)** are **DISMISSED** from this action without prejudice for failure to state a claim against them upon which

relief may be granted.

The Clerk of Court shall prepare for **WEXFORD HEALTH SOURCES, INC., TROST, KNIEPERT, SMITH, WINTERS,** and **SOUTH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: February 23, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**